Youssef H. Hammoud (SBN: 321934)
Ely Grinvald (SBN 285475)
THE CREDIT ATTORNEY, INC.
601 N. Parkcenter Dr., Suite 202
Santa Ana, CA 92705
T: (949) 301-9692
F: (949) 301-9693
E: yhammoud@thecreditattorney.com
E: egrinvald@thecreditattorney.com

*Attorneys for Plaintiff,*
*Harlan Maass*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HARLAN MAASS,<br>Plaintiff,<br>v.<br>OPTUM, INC.; RAY KLEIN, INC. d/b/a PROFESSIONAL CREDIT SERVICE,<br>Defendants. | Case No. 2:26-cv-10711<br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br>1. FDCPA, 15 U.S.C. § 1692 *et seq.*<br>2. RFDCPA, Cal. Civ. Code § 1788 *et seq.*<br>(Unlawful Debt Collection Practices) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Harlan Maass ("Plaintiff"), by and through his attorneys, alleges the following against Defendants Optum, Inc. ("Optum") and Ray Klein, Inc. d/b/a Professional Credit Service ("PCS") (collectively, "Defendants").

## INTRODUCTION

1. Count I of Plaintiff's Complaint is based upon the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and is brought against Defendant PCS. Count II is based upon the Rosenthal Fair Debt

Collection Practices Act, Cal. Civ. Code § 1788 *et seq.* ("RFDCPA"), and is brought against all Defendants. Both statutes prohibit debt collectors from engaging in abusive, deceptive, and unfair practices in connection with the collection of consumer debts.

## JURISDICTION AND VENUE

2. The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

3. Supplemental jurisdiction of this Court arises under 28 U.S.C. § 1367 because the state law claims are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. Because Defendants conduct business within the County of Los Angeles, State of California, personal jurisdiction is established.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District, where Plaintiff resides and received Defendants' collection communications.

## PARTIES

6. Plaintiff is a "person" as defined by Cal. Civ. Code § 1788.2(g).

7. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

8. Plaintiff is a natural person residing in Claremont, California.

9. Plaintiff, as a natural person allegedly obligated to pay a consumer debt, alleged to have been due and owing, is a "debtor" as that term is defined by California Civil Code § 1788.2(h) of the Rosenthal Act.

10. As partnerships, corporations, limited liability companies, or other similar entities, Defendants are each a "person" within the meaning of California Civil Code § 1788.2(g) of the Rosenthal Act.

11. Defendants allege Plaintiff owes money arising out of medical treatment/services performed upon Plaintiff by Defendant Optum for treatment of injuries arising out of an industrial workplace accident, without payment being required at the time of services being rendered, and Plaintiff is informed and believes the money alleged to be owed originated from monetary credit that was extended primarily for personal, family, or household purposes, and is therefore a "debt" as that term is defined by California Civil Code § 1788.2(d) and 15 U.S.C. § 1692a(5).

12. Plaintiff allegedly owed a monetary debt to Defendant Optum, which makes Defendant Optum a "creditor" under California Civil Code § 1788.2(i) of the Rosenthal Act.

13. Upon information and belief, Defendants are attempting to collect on a debt that originated from monetary credit that was extended primarily for personal, family, or household purposes due to medical treatment/services performed upon Plaintiff to treat injuries arising out of a workplace accident without payment being required at the time of services and was therefore a "consumer credit transaction" within the meaning of California Civil Code § 1788.2(e) of the Rosenthal Act.

14. Because Plaintiff, a natural person allegedly obligated to pay money arising from what Plaintiff is informed and believes was a consumer credit transaction due to medical treatment/services performed upon Plaintiff to treat injuries arising out of a workplace accident without payment being required at the time of services, the money allegedly owed was a "consumer debt" within the meaning of California Civil Code § 1788.2(f) of the Rosenthal Act.

15. Plaintiff is informed and believes Defendant Optum regularly collects or attempts to collect debts on behalf of itself and is therefore a "debt collector" within the meaning of California Civil Code § 1788.2(c) of the

Rosenthal Act, and thereby engages in “debt collection” within the meaning of California Civil Code § 1788.2(b) of the Rosenthal Act.

16. At all relevant times herein, Defendant Optum was a company engaged, by use of mail and telephone, in the business of collecting a debt from Plaintiff which qualifies as a “debt,” as defined by Cal. Civ. Code § 1788.2(d). Defendant Optum can be served through its agent for service of process, C T Corporation Systems, located at 1010 Dale Street North, Saint Paul, MN 55117.

17. Plaintiff is informed and believes that Defendant PCS uses instrumentalities of interstate commerce and the mails in a business the principal purpose of which is the collection of debts, and regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another, and is therefore a “debt collector” as defined by 15 U.S.C. § 1692a(6).

18. Defendant PCS, in the ordinary course of business, regularly, on behalf of others, engages in debt collection and is therefore a “debt collector” within the meaning of California Civil Code § 1788.2(c) of the Rosenthal Act, and thereby engages in “debt collection” within the meaning of California Civil Code § 1788.2(b) of the Rosenthal Act.

19. At all relevant times herein, Defendant PCS was a company engaged, by use of mail and telephone, in the business of collecting a debt from Plaintiff which qualifies as a “debt,” as defined by 15 U.S.C. § 1692a(5) and Cal. Civ. Code § 1788.2(d). Defendant can be served through its agent for service of process, Incorp. Services, Inc., located at 5716 Corsa Avenue, Suite 110, Westlake Village, CA 91362.

20. The true names and capacities, whether individual, corporate, associate, governmental, or otherwise, of Defendants, DOES 1 through 10, are unknown to Plaintiff at this time, who therefore sues said Defendants by

such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiff will amend this Complaint accordingly. Plaintiff is informed and believes, and thereon alleges, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused damages thereby to the Plaintiff, as hereinafter alleged. Defendants DOES 1-10 are, and each of them is, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and California Civil Code § 1788.2(c).

21. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

22. Between on or about February 26, 1995 and July 5, 2018, Plaintiff suffered a work-related cumulative trauma injury.

23. Plaintiff's workplace injury has required on-going medical treatment/services.

24. Plaintiff's employer accepted liability for the injuries Plaintiff suffered at work, and therefore, any and all amounts due for the medical treatment and/or services rendered in relation to his workplace injury are not Plaintiff's legal responsibility.

25. In connection with his workers' compensation case, Plaintiff was scheduled for a re-evaluation by the Qualified Medical Evaluator ("QME"), Dr. Bradley Rosenberg, assigned to his case, a physician whose services are billed by Defendant Optum.

26. Plaintiff had previously been evaluated by the same QME in his workers' compensation case.

27. On or about January 31, 2025, Plaintiff's workers' compensation attorney wrote to the QME confirming that the evaluation scheduled for

March 31, 2025 was a medical-legal evaluation in Plaintiff's workers' compensation case.

28. On or about March 31, 2025, Plaintiff attended the medical-legal re-evaluation with the QME in connection with his workplace injury and workers' compensation case.

29. When Plaintiff checked in for the March 31, 2025 evaluation, he told the front-desk staff at the QME's office that he was there to see the QME for his workers' compensation case.

30. During the evaluation, the QME discussed Plaintiff's workers' compensation case with him and was aware that the purpose of the visit was a re-evaluation for that case.

31. Defendant Optum billed the March 31, 2025 evaluation as a physician office visit with Dr. Rosenberg, the QME.

32. As such, Optum was aware that Plaintiff was seeking medical treatment/services related to his workplace accident and pending workers' compensation claim.

33. Upon information and belief, Plaintiff's medical file and/or account notes reflect that Plaintiff's injury was the result of a workplace accident and that Plaintiff had an on-going workers' compensation case.

34. The medical treatment/services rendered by Optum were necessitated by Plaintiff's workplace injury and were subject to Plaintiff's workers' compensation case.

35. Defendant Optum knew or should have known that it was providing medical treatment/services to Plaintiff related to his workplace injury.

36. Defendant Optum knew, or at a minimum should have known, that Plaintiff's injuries were the result of a workplace accident, and that

Plaintiff's employer was responsible for any bills related to the medical treatment/services rendered for the workplace accident.

37. As such, Defendant Optum is prohibited from engaging in any collection efforts related to the alleged debt at issue.

38. Defendant Optum, in its ordinary course of business, regularly, on behalf of itself, engages in debt collection.

39. Despite knowing that Plaintiff's injury was the result of a workplace accident subject to workers' compensation, Defendant Optum began attempting to collect from Plaintiff directly and sent Plaintiff medical bills/statements related to the medical treatment/services rendered to him for his workplace injury.

40. On or about November 9, 2025, Defendant Optum sent Plaintiff a medical bill/statement for the March 31, 2025 medical treatment/services rendered to Plaintiff for his workplace injury.

41. The medical bill/statement was attempting to collect the amount of $717.00, which Plaintiff is not legally responsible for.

42. On or about December 9, 2025, Defendant Optum sent Plaintiff a medical bill/statement for the March 31, 2025 medical treatment/services rendered to Plaintiff for his workplace injury.

43. The medical bill/statement was attempting to collect the amount of $717.00, which Plaintiff is not legally responsible for.

44. The November 9, 2025 and December 9, 2025 medical bills/statements each stated: "Your bill may be sent to collections if a payment is not made."

45. After receiving the August 8, 2025 medical bill/statement, Plaintiff called Defendant Optum's billing office, told the representative that the evaluation was part of his workers' compensation case, and provided his workers' compensation insurance information and claim number.

46. Defendant Optum nonetheless placed multiple telephone calls to Plaintiff about the bill, and each time Plaintiff answered he repeated that the evaluation was covered by his workers' compensation claim.

47. On or about September 16, 2025, Plaintiff's workers' compensation attorney sent Defendant Optum a cease and desist letter.

48. Upon information and belief, Defendant Optum received the September 16, 2025 letter.

49. Defendant Optum sent the November 9, 2025 and December 9, 2025 medical bills/statements after Plaintiff's telephone call and after Plaintiff's workers compensation attorney sent the September 16, 2025 letter.

50. Having been advised by Plaintiff at the time of treatment, Defendant Optum possessed specific information regarding Plaintiff's injury, including the fact that it was a work-related injury; a critical fact which Defendant Optum knew or should have known.

51. Defendant Optum engaged in debt collection by sending Plaintiff repeated medical bills/statements related to the medical treatment/services rendered to him for his workplace injury.

52. Upon information and belief, Defendant Optum uses third-party debt collector Defendant PCS to engage in debt collection for its patients.

53. Upon information and belief, Defendant Optum placed Plaintiff's account with Defendant PCS for collection in or around December 2025 and provided Defendant PCS with Plaintiff's account information, including the information reflecting Plaintiff's workplace injury and workers' compensation claim.

54. As such, Defendant PCS, in the ordinary course of business, regularly, on behalf of others, engages in debt collection.

55. On or about December 16, 2025, Defendant PCS sent Plaintiff a collection letter for the March 31, 2025 medical treatment/services rendered to Plaintiff by Defendant Optum for his workplace injury.

56. The collection letter stated that Defendant PCS was "trying to collect a debt that you owe to OPTUM CARE" and was attempting to collect the amount of $717.00, which Plaintiff is not legally responsible for.

57. On or about January 12, 2026, Plaintiff's workers' compensation attorney sent Defendant PCS and Defendant Optum letters advising that the March 31, 2025 evaluation was a medical-legal evaluation in Plaintiff's workers' compensation case.

58. Upon information and belief, Defendants received the January 12, 2026 letters and the petition.

59. On or about January 22, 2026, after Plaintiff's workers' compensation attorney had disputed the account with Defendants in writing, Defendant PCS sent Plaintiff a second collection letter regarding the same account for the March 31, 2025 medical treatment/services rendered to Plaintiff by Defendant Optum for his workplace injury.

60. The collection letter was attempting to collect an amount from Plaintiff, which Plaintiff is not legally responsible for.

61. Defendant PCS's January 22, 2026 collection letter acknowledged that Plaintiff had disputed the account, stated that Defendant PCS's client had "requested that you contact their offices directly to provide additional information regarding your dispute," and stated that the letter was "an attempt to collect a debt."

62. The January 22, 2026 collection letter further warned Plaintiff that "a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations."

63. In California it is illegal for debt collectors to report medical debt on a consumer credit report. As such, PCS' collection letter threatened action that cannot legally be taken or that was not intended to be taken.

64. Upon information and belief, Defendant PCS did not provide Plaintiff with verification of the alleged debt in response to the dispute and instead continued its collection efforts.

65. The collection letters were attempting to collect an amount that was not permitted by law because Plaintiff was not responsible for any medical bills related to his workplace injury.

66. Despite knowing that Plaintiff's injury was a workplace accident subject to workers' compensation, Defendant PCS attempted to collect from Plaintiff directly and sent Plaintiff collection letters attempting to collect on an alleged debt he is not legally responsible for.

67. Having been advised by Plaintiff and/or the medical staff at the time of treatment, Defendant PCS possessed and/or had access to specific information regarding Plaintiff's injury, including the fact that it was a work-related injury; a critical fact which Defendant PCS knew or should have known.

68. Defendant PCS engaged in debt collection by sending Plaintiff repeated collection letters related to the medical treatment/services rendered to him for his workplace injury.

69. Defendants engaged in debt collection by sending Plaintiff repeated medical bills/statements and collection letters related to the medical treatment/services rendered to him for his workplace injury.

70. Upon information and belief, Defendants routinely engage in unlawful debt collection practices against consumers.

71. Defendants' conduct was done intentionally and was intended to coerce Plaintiff into making a payment on an alleged debt that he does not owe and is not responsible for.

72. The medical bills/statements and collection letters sent by Defendants deceived Plaintiff into thinking he was legally responsible for the medical treatment/services rendered to him for his workplace injury. Defendants' collection attempts misled Plaintiff by implying that he was personally responsible for the alleged debt, despite knowing that the debt was covered under workers' compensation.

73. Due to Defendants' abusive actions, Plaintiff suffered from emotional and mental pain and anguish, including but not limited to, stress, anxiety, fear, and confusion.

74. Plaintiff was attempting to focus on his health and recovery from his workplace injury; Defendants' repeated collection efforts interrupted Plaintiff's solitude and added to Plaintiff's distress.

75. Plaintiff was under the belief that all medical treatment/services he received that were related to his workplace injury were not his responsibility and would be paid for by his employer, which is what the law mandates.

76. Plaintiff understood from his workers' compensation attorney that he was not responsible for the medical services related to his workplace injury, but the repeated bills/statements and collection letters caused him to doubt his attorney.

77. Defendants had in their possession, and/or had access to, all information necessary to properly handle the correct billing for the treatment, and despite this, Defendants sent Plaintiff bills/statements and collection letters in an attempt to collect on a debt Plaintiff is not legally responsible for.

78. The RFDCPA is a "state version" of the FDCPA that "mimics or incorporates by reference the FDCPA's requirements," including sections 1692d through 1692f, "and makes available the FDCPA's remedies for violations." *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012).

79. The RFDCPA is a strict liability statute. *Garcia v. Creditors Specialty Serv.*, No. 14-cv-01806-BLF, 2016 U.S. Dist. LEXIS 159686, at *15 (N.D. Cal. Nov. 2016).

80. Defendants attempted to collect a debt regarding Plaintiff's medical treatment/services stemming from a work-related injury covered by workers' compensation.

81. Plaintiff has the interest and right to be free from collection efforts on debts Plaintiff does not owe.

82. Plaintiff has the interest and right to be free from the fear of being sued on debts Plaintiff does not owe.

83. Plaintiff has the interest and right to be free from the fear of being placed in collections on debts Plaintiff does not owe.

84. Plaintiff has the interest and right to be free from deceptive and/or misleading communications from debt collectors, including Defendants.

85. Defendants deprived Plaintiff of these rights.

86. The alleged debt(s) Defendants are attempting to collect cannot be lawfully collected from Plaintiff and as a result, the bills/statements and collection letters contain false, deceptive, and misleading representations.

87. Defendants engaged in unfair and/or deceptive acts and/or unfair methods of competition by attempting to collect amounts that cannot lawfully be collected from Plaintiff.

88. Defendants' conduct as described in this Complaint was willful, with the purpose to either harm Plaintiff or with reckless disregard for the harm to Plaintiff that could result from Defendants' conduct.

89. Plaintiff justifiably fears that, absent this Court's intervention, Defendants will continue to use abusive, deceptive, unfair, and unlawful means in their attempts to collect the alleged debts and other alleged debts.

90. Plaintiff justifiably fears that, absent this Court's intervention, Defendants will ultimately cause Plaintiff unwarranted harm to Plaintiff's credit rating.

91. Plaintiff justifiably fears that, absent this Court's intervention, Defendants will ultimately cause Plaintiff to be sued for debts Plaintiff does not owe.

92. As a result of Defendants' conduct, Plaintiff wasted time, was caused to be confused and unsure as to Plaintiff's rights, and ultimately sought counsel and advice causing Plaintiff the risk of incurring damages including reasonable attorneys' fees in reviewing Plaintiff's rights under the law and prosecuting this claim.

93. As a result of Defendants' conduct, Plaintiff's counsel was caused to expend time, energy, and money to investigate Plaintiff's rights under the law and the legitimacy of the alleged debt.

94. The deprivation of Plaintiff's rights will be redressed by favorable decision herein.

95. Plaintiff has a physical impairment that substantially limits one or more major life activities, including but not limited to, performing manual tasks and working, and is therefore a "disabled person" as defined in Cal. Civ. Code § 1761(g).

**COUNT I**
**Defendant PCS**
**(Violations of the FDCPA, 15 U.S.C. § 1692 *et seq.*)**

96. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

97. Defendant PCS violated the FDCPA. Defendant PCS's violations include, but are not limited to, the following:

a. Defendant PCS violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

b. Defendant PCS violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of any debt.

c. Defendant PCS violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, or legal status of any debt.

d. Defendant PCS violated 15 U.S.C. § 1692e(5) by threatening to take any action that cannot legally be taken, or that is not intended to be taken.

e. Defendant PCS violated 15 U.S.C. § 1692e(10) by using false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer.

f. Defendant PCS violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect or attempt to collect any debt.

g. Defendant PCS violated 15 U.S.C. § 1692f(1) by attempting to collect any amount (including any interest,

fee, charge or expense incidental to the principal obligation) that is not permitted by law.

98. Defendant PCS's acts, as described above, were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

99. As a result of the foregoing violations of the FDCPA, Defendant PCS is liable to Plaintiff for actual damages, statutory damages, and attorneys' fees and costs.

**COUNT II**
**All Defendants**
**(Violations of RFDCPA, CAL. CIV. CODE § 1788 *et seq.*)**

100. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

101. Defendants violated the RFDCPA. Defendants' violations include, but are not limited to, the following:

a. Defendants violated Cal. Civ. Code § 1788.17 by collecting or attempting to collect a consumer debt without complying with the provisions of Sections 1692b to 1692j, inclusive, of . . . Title 15 of the United States Code (Fair Debt Collection Practices Act):

i. Defendants violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

ii. Defendants violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of any debt.

iii. Defendants violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, or legal status of any debt.

iv. Defendants violated 15 U.S.C. § 1692e(5) by threatening to take any action that cannot legally be taken, or that is not intended to be taken.

v. Defendants violated 15 U.S.C. § 1692e(10) by using false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer.

vi. Defendants violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect or attempt to collect any debt.

vii. Defendants violated 15 U.S.C. § 1692f(1) by attempting to collect any amount (including any interest, fee, charge or expense incidental to the principal obligation) that is not permitted by law.

102. Defendants' acts, as described above, were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

103. As a result of the foregoing violations of the RFDCPA, Defendants are liable to Plaintiff for actual damages, statutory damages, and attorneys' fees and costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Harlan Maass respectfully requests judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendant PCS violated the FDCPA;

B. Statutory damages against Defendant PCS of $1,000.00 pursuant to the FDCPA, 15 U.S.C. § 1692k(a)(2)(A);

C. Actual damages against Defendant PCS pursuant to the FDCPA, 15 U.S.C. § 1692k(a)(1);

D. Costs and reasonable attorneys' fees against Defendant PCS pursuant to the FDCPA, 15 U.S.C. § 1692k(a)(3);

E. Declaratory judgment that Defendants violated the RFDCPA;

F. Statutory damages against Defendants of $1,000.00 pursuant to the RFDCPA, Cal. Civ. Code § 1788.30(b);

G. Actual damages against Defendants pursuant to Cal. Civ. Code § 1788.30(a);

H. Costs and reasonable attorneys' fees against Defendants pursuant to the RFDCPA, Cal. Civ. Code § 1788.30(c);

I. Treble damages pursuant to Cal. Civ. Code § 3345 for the sake of punishing or deterring Defendants for their conduct;

J. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

K. Any other relief that this Honorable Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff demands a trial by jury in this action.

Respectfully submitted this 21st day of September 2026.

/s/ Ely Grinvald
Youssef H. Hammoud (SBN: 321934)
Ely Grinvald (SBN 285475)
THE CREDIT ATTORNEY, INC.
601 N. Parkcenter Dr., Suite 202
Santa Ana, CA 92705
T: (949) 301-9692
F: (949) 301-9693
E: yhammoud@thecreditattorney.com
E: egrinvald@thecreditattorney.com

*Attorneys for Plaintiff,*
*Harlan Maass*